IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 05-cv-00333-PSF-CBS

KIRK TONE,

      Plaintiff,

v.

REGIONAL TRANSPORTATION DISTRICT (RTD),

      Defendant.

---

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

This matter comes before the Court on Defendant's Motion for Summary
Judgment (Dkt. # 16), filed December 29, 2005, together with a supporting brief and
Exhibits A through P, along with copies of cited unpublished decisions compiled under
Exhibit Q.  Plaintiff filed his brief in opposition ("Plaintiff's Response") on February 17,
2006 (Dkt. # 17).  Although this filing was untimely under the Local Rules, the Court
allowed the brief to be filed out of time by Order entered on February 23, 2006 (Dkt.
# 21).  The Plaintiff's Response was filed without any additional supporting documents
attached, relying instead on the exhibits attached to defendant's brief.  Defendant filed
its reply on March 6, 2006 (Dkt. # 23), together with additional Exhibits R through T,
as well as supplemental parts to its Exhibits A and Q.

The Final Pretrial Order was entered on April 19, 2006 (Dkt. # 29).  The matter
is set for a five-day jury trial commencing August 28, 2006.  The matter is ripe for

determination.  The Court has determined that oral argument will not be of material assistance.

## I.    BACKGROUND

Plaintiff Kirk Tone, commenced employment as a bus driver with Defendant Regional Transportation District ("RTD") in May 1993 (Final Pretrial Order at 2, 4; Defendant's Motion at 3).  He injured his back in a work related accident while driving a bus on June 22, 2000 (*id*.).  Plaintiff received workmen's compensation benefits for his injury and essentially remained on leave status at RTD for approximately 3½ years (Defendant's Motion at 3; Plaintiff's Response at 2).

In October 2003, plaintiff was examined by Dr. Ann Craig, a neurologist, apparently at the request of Colorado's Worker's Compensation Division, who found that plaintiff had reached maximum medical improvement from his back injury (Defendant's Motion at 4; Plaintiff's Response at 2; Exhibit B to Defendant's Motion). On or about December 12, 2003, plaintiff was examined by Dr. William Shaw, a specialist in occupational medicine, apparently at the request of the RTD for the purpose of a "fitness for duty evaluation."  *See* Exhibit C to Defendant's Motion. Dr. Shaw's letter opined that "it is unlikely that [plaintiff] would be able to sustain employment as a full time bus driver with his objectively documented medical problems" and "that return to driving will soon result in marked increase in pain, as well as substantial limitations of functionality."  The letter further states that in Dr. Shaw's opinion:

it is imprudent and medically inappropriate for me to provide
him an unlimited release to return to work as a bus driver.
Such a return to work would, in my opinion, place him at
significant risk.  Furthermore, I cannot exclude the risk that
a return to work would place him in a situation where he may
not be able to safely drive or control a commercial vehicle.
As such, in my opinion, return to work as a bus driver would
result in a direct threat to both himself and others.

Exhibit C to Defendant's Motion at 5.

By letter dated January 15, 2004, the defendant advised plaintiff that it believed

his restrictions prohibit him "from performing the essential functions" of his current job,

"with or without reasonable accommodation," that he was "welcome to explore

re-assignment at RTD," that he would be given additional time of 45 days to "look

for other positions within RTD" but that "if no position is found prior to March 1, 2004,

your employment will be terminated on that date."  Exhibit F to Defendant's Motion.

While the parties dispute the extent to which plaintiff sought other positions with

the RTD, as well as the reasonableness of the defendant's responses to plaintiff's

inquiries, the undisputed evidence is that as of March 1, 2004 plaintiff had not been

placed in another position with the RTD and on that date plaintiff was terminated from

his employment with RTD (Final Pretrial Order at 4).

In early February 2005, plaintiff filed his complaint in the Denver District Court

alleging three claims for relief under the Americans with Disabilities Act ("ADA"),

42 U.S.C. § 12111 *et seq.*  Defendant removed the case to this Court on February 23,

2005.  Plaintiff's three claims for relief assert that plaintiff is a qualified individual with

a disability under the ADA as to whom the defendant violated the ADA by (1) failing

to make a reasonable accommodation due to his disability (First Claim for Relief);

(2) discriminating against him due to his disability by hiring other non-disabled persons

for vacant positions and treating him less favorably than other non-disabled persons

(Second Claim for Relief); and (3) wrongfully terminating him "because of his record of

impairment or perceived disability." (Third Claim for Relief).  As relief plaintiff seeks

reinstatement to a "suitable position" and restoration of his pay with defendant, back

pay benefits, compensatory and punitive damages.  Complaint at 3-4.

## II.      DEFENDANT'S MOTION AND PLAINTIFF'S RESPONSE

Defendant moves for summary judgment on all three of plaintiff's ADA claims,

first asserting that plaintiff has failed as a matter of law to show that he is disabled

within the meaning of the statute.  Defendant also contends that even if plaintiff is

disabled within the meaning of the statute, he has failed to show defendant did not

make a reasonable effort to accommodate his disability, or that he was discriminated

against and treated differently from non-disabled persons.

Plaintiff, citing to the exhibits filed with the defendant's brief, argues that there

are disputed issues of material facts as to all three of his claims under the ADA so as

to preclude the entry of summary judgment.

## III.     STANDARD OF REVIEW

The purpose of a summary judgment motion is to assess whether a trial is

necessary.  *White v. York Int'l Corp.,* 45 F.3d 357, 360 (10th Cir. 1995).  In other words,

"there must be evidence on which the jury could reasonably find for the plaintiff."  *Panis*

*v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995), *cert. denied*, 516

U.S. 1160 (1996), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

A court grants summary judgment for the moving party only where there is no genuine

issue as to any material fact in the pleadings, depositions, answers to interrogatories,

admissions, and affidavits.  F.R.Civ.P. 56(c).  When applying this standard, a court

must view the factual record in the light most favorable to the nonmovant.  *Applied*

*Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990).

"[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is,

if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party."  *Anderson*, 477 U.S. at 248.

## IV.   ANALYSIS

To establish a prima facie case of disability discrimination under the Act, a

plaintiff must show that (1) he is disabled within the meaning of the ADA; (2) he is

qualified for his employment position; and (3) the defendant discriminated against him

because of his disability.  *Doebele v. Sprint/United Management Co.*, 342 F.3d 1117,

1128 (10th Cir. 2003).  For the reasons set forth below, the Court need only address

the threshold issue raised by defendant, namely whether plaintiff has come forward

with sufficient evidence to make a showing that he is disabled within the meaning of

the ADA.

A plaintiff may meet the statutory definition of disability by demonstrating that he

has a "physical or mental impairment that substantially limits one or more of the major

life activities of such individual," that he has "a record of such an impairment" or that

his employer "regarded [him] as having such an impairment."  42 U.S.C. § 12102(2).

Plaintiff here alleged in his complaint that he meets the definition of disability under all three criteria.  Complaint at ¶ 26.  Defendant argues in its motion that plaintiff failed to meet any of the three statutory definitions of disability (Defendant's Motion at 13-21). Although citing in passing to the three parts of the statutory definition of disability, Plaintiff's Response argues substantively only that plaintiff has a physical impairment that substantially limits one or more major life activities (Plaintiff's Response at 6-9). Plaintiff offers no argument that he is perceived as disabled or has a record of disability.  Moreover, in the Final Pretrial Order plaintiff asserts only a disability based on "a substantial impairment in the major life activity of sitting" (Final Pretrial Order at 3).   The Final Pretrial Order supersedes the pleadings.  Accordingly, the Court addresses only the issue of whether plaintiff has established a *prima facie* case of disability based on his alleged physical impairment.

As further explained in *Doebele*, under this definition of disability, in order for a plaintiff to show that an impairment substantially limits at least one major life activity, he must show three elements.  First, that he has have a recognized impairment; second, the plaintiff must identify one or more appropriate major life activities; and third, the plaintiff must show that the impairment substantially limits one or more of those activities.  *Doebele, supra*, 342 F.3d at 1129.

The framework for analyzing these three elements is also set forth in *Doebele*, which holds, citing to *Bristol v. Bd. of County Comm'rs of Clear Creek County,* 281 F.3d 1148, 1158 (10th Cir.), *rev'd in part on other grounds*, 312 F.3d 1213 (10th Cir. 2002) (en banc), whether the plaintiff has an impairment within the meaning of the ADA is a

-6-

question of law for the court to decide.  Whether the conduct affected is a major life activity for purposes of the Act is also a legal question for the court.  However, ascertaining whether the impairment substantially limits the major life activity is generally a factual question for the jury, subject to the limitations addressed below. *Doebele, supra*, 342 F.3d at 1129.

With respect to analyzing the first element*, Doebele* further holds that the plaintiff "must articulate with precision the impairment alleged and the major life activity affected by that impairment," citing to *Poindexter v. Atchison, Topeka & Santa Fe Ry.,*168 F.3d 1228, 1230 (10th Cir. 1999) and the court is to analyze only those activities identified by the plaintiff.  *Id.*  In the instant case, plaintiff's complaint alleges as his impairment a "back injury" and asserts that the major life activities affected are "lifting, manual activities, and other activities such as bending, stooping, and twisting." Complaint, ¶ 26.  Plaintiff's Response, however, after describing his back injury states only that "as a result of this condition, [he] is unable to sit for more than thirty minutes without pain."  Plaintiff's Response at 7.  Moreover, in the Final Pretrial Order plaintiff refers only to "the major life activity of sitting" stating he "cannot sit for more than 30 minutes without pain."  Final Pretrial Order at 3.  Based on the admonition of *Doebele*, this Court will analyze only whether plaintiff has established that his back injury constitutes a substantial impairment of sitting as a major life activity.

With respect to the first element--whether the plaintiff has an impairment–the Court finds that his back injury could constitute a disability under the ADA.  Indeed, defendant does not appear to argue to the contrary (Defendant's Brief at 13-15).

With respect to the second element, that is whether sitting is a major life activity, the parties do not appear to seriously dispute that sitting is included within the definition of a "major life activity."  Indeed, the Equal Employment Opportunity Commission Regulations to Implement the ADA list examples of "major life activities" *see* 29 C.F.R. 1630.2(I), and although that list does not explicitly include "sitting" as an example, the Appendix to that section states "[t]his list is not exhaustive.  For example, other major life activities include, but are not limited to, sitting, standing, lifting, reaching."  29 C.F.R. Pt. 1630, App. Section 1630.2(I) Major Life Activities.  The Court finds that sitting could be a major life activity within the meaning of the ADA.

The central dispute between the parties in the instant case relates to the third element--that is whether plaintiff has demonstrated that his back impairment "substantially limits" his major life activity of sitting.  As noted above, while *Doebele* states that whether the impairment substantially limits the major life activity is generally a factual question for the jury, it also states that "in proper circumstances a court may decide this step on a motion for summary judgment."  *Doebele, supra* 342 F.3d at 1130, n.5.

As stated in *Lusk v. Ryder Integrated Logistics*, 238 F.3d 1237, 1240 (10th Cir. 2001), "[a]n impairment 'substantially limits' a major life activity if the individual is unable to perform the activity or is significantly restricted in the ability to perform the major life activity compared to the general population."  As set forth in *Doebele, supra,* a physical impairment is substantially limiting if the affected individual is:

(I) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

342 F.3d at 1130.  In making the determination of whether a plaintiff is substantially limited the Court considers: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long term impact or the expected permanent or long term impact of or resulting from the impairment.  *Id.*  As summarized in *Doebele, supra,* "to establish that she was substantially limited in the major life activities she identified, [the plaintiff] was required to show, under the factors set out above, either that she was unable to perform these activities or was significantly restricted in her ability to perform them when compared to the average person in the general population."  *Id.*  Or, as stated in *Velarde v. Associated Regional and University Pathologists*, 61 Fed. Appx. 627, 629 (10th Cir., Apr. 2, 2003): "Limitations on the ability to engage in life activities, such as lifting heavy objects, is part of the human condition, and unless an ADA plaintiff can show that his impairment reduces his capabilities significantly below those of the average person, he is not deemed 'disabled' under the Act."

Plaintiff in this case contends that he has a substantial impairment in the major life activity of sitting because "[a]ccording to the RTD's doctors, he cannot sit for more than 30 minutes without pain."  (Plaintiff's Response at 3).  Defendant contends that

plaintiff has failed to present any evidence to support this allegation, and in any event has failed to make the showing required by *Doebele* that he is significantly restricted when compared to the average person in the general population (Defendant's Reply at 3-10).  For the reasons set forth below, the Court agrees that plaintiff has failed to make a showing sufficient to demonstrate that he is disabled as defined by the ADA in accordance with the above-stated case law.

First, the medical evidence of record on which plaintiff relies is contained solely in the reports of Drs. Craig and Shaw, referenced above.  Dr. Craig's report of October 21, 2003, certainly describes in detail the back injury suffered by plaintiff.  Exhibit B to Defendant's Motion at 4.  The report also states that plaintiff subjectively reported constant back pain of variable severity, dependent on activity.  *Id.* at 2.  According to what plaintiff told Dr. Craig, "[t]he pain increases with bending, sitting squarely 15 - 20 minutes or on his left buttock for 30 - 45 minutes, with heavier housework such as vacuuming."  *Id.*  The report also states that according to plaintiff "[d]riving an automatic transmission for 30 minutes increases pain and pain is severe if he drives 90 minutes."  *Id.*  Dr. Craig, however, does not provide an objective opinion as to any restriction based on the pain as described by plaintiff, but merely assigns an overall impairment rating of 17%.  *Id.* at 4.

Dr. Shaw's report of his examination of December 12, 2003 restates the description of plaintiff's pain as set forth in Dr. Craig's report.  Exhibit C to Defendant's Motion at 2.  Dr. Shaw reports that despite the description of pain, the plaintiff "almost pleads with me to allow a return to work," that plaintiff thinks "it is all just a matter of

-10-

'pain management,'" that his symptoms have improved since those described in

Dr. Craig's report, that he has "way more good days than bad," he is not in agony

anymore.  *Id.* at 3.  Despite plaintiff's self-described improvement, Dr. Shaw opined,

as noted above, that plaintiff should not return to work as a bus driver for the RTD.

*Id.* at 5.

In his deposition testimony given in this case on September 29, 2005, plaintiff

himself testified that in September 2003, and possibly as early as May or June 2003,

he was "insisting" to his doctors that no restrictions on his work activity were needed,

and that he "was well enough to go back to work without them."  Depo. of Tone,

Exhibit A to Defendant's Motion at 65.  He argued against the doctor restricting him to

apparently one hour of uninterrupted driving time, believing that he could drive for two

hours without interruption.  *Id.*  He further testified, contrary to the argument in his

Response Brief, that he believed that it was reasonable for him to sit for more than one

hour or even two hours "at a stretch."  *Id.* at 65-66.  He did testify that sitting for three

hours "is a bit tough."  *Id.*  Elsewhere in his deposition plaintiff was asked what

activities he claimed he could not do or was limited in doing because of his "disability"

and while he listed skiing, bike riding, running, lifting something heavy without bending

his knees, and playing tackle football, he made no mention of being limited in sitting.

*Id.* at 94-95.  He further testified that he can drive his car.  *Id.* at 95.

Plaintiff also testified that after being terminated from the RTD he obtained

employment in May 2004 as a driver of an armored truck for Loomis Fargo as well as a

messenger and guard.  Supplement to Exhibit A, attached to Defendant's Reply Brief,

at 16.  Plaintiff testified that his shifts with Loomis Fargo can be as long as 16 hours

and as short as 8 hours, six days per week, between 60 to 80 hours per week.  *Id.* at

18.  He further testified that when performing as the driver of the truck, he sits "all day"

with maybe one or two restroom stops.  *Id.* at 19.  He also testified that when

performing the messenger aspect of the job, he lifts up to 30 pounds at one time.  *Id.*

As noted above, plaintiff's argument that he has a substantial impairment of

a major life activity is based on what he refers to as the reports of the RTD doctors,

without regard to the plaintiff's own testimony.  While the report of Dr. Craig does set

forth an impairment rating, and the report of Dr. Shaw does place a restriction on

plaintiff's return to work as a bus driver, such impairment rating and work restriction

alone do not support a finding of substantial impairment of a major life activity.  *See*

*Lusk, supra*, 238 F.3d at 1240-41.  Indeed, Dr. Shaw's limitation, which was specific to

plaintiff's ability to drive a bus or commercial vehicle, is not necessarily indicative of a

substantial impairment of a major life activity.  As Dr. Shaw wrote, his opinion was that

a "return to driving" may cause an increase in plaintiff's pain, and that plaintiff's return

to work as a driver could place him in a situation where he may not be able to safely

drive or control a commercial vehicle, resulting in a threat to both plaintiff and others

(Exhibit C to Defendant's Motion at 5).

Like *Lusk*, this is not a case where the alleged impairment appears to be

substantially limiting "on its face" particularly given plaintiff's own testimony that he can

drive and has been driving a truck for substantial periods of time.  Moreover, other than

the reports of the doctors referenced above, plaintiff has produced no comparative

evidence from which a reasonable inference can be drawn that his ability to sit is significantly restricted when compared to the average person in the general population. *See Doebele, supra*, 342 F.3d at 1130.   Therefore, as was the case in *Lusk*, plaintiff's evidence in this case is insufficient to prove his impairment substantially limits his sitting ability as required under the ADA.

Accordingly, this Court finds that plaintiff has not made a sufficient showing that he is disabled by a physical impairment within the meaning of the ADA.  Having found that plaintiff has failed to make such a showing, the Court need not address the other arguments advanced by defendant.  Defendant's motion for summary judgment is granted.

**CONCLUSION**

Defendant's Motion for Summary Judgment (Dkt. # 16) is GRANTED, and plaintiff's case is DISMISSED WITH PREJUDICE.

DATED: July 19, 2006

BY THE COURT:

*s/ Phillip S. Figa*

_____
Phillip S. Figa
United States District Judge